**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

EARL J. MORGAN, III, #1059872,

    Plaintiff,

v.                          Civil Action No. 1:11cv1150 (JCC/TCB)

R.K. LEWIS, et al.,

    Defendants.

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    COME NOW the Defendants Capt. R. K. Lewis; Sgt. J. W. King; Sgt. Dobyns; C/O Elliott; C/O Tuppons; C/O Bryant; Hearing Officer S. W. Allen; Hearing Officer D. R. Dugger; Assistant Warden Boone; and Regional Director Robinson, by counsel, and in support of their motion for summary judgment submit the following.

**INTRODUCTION**

    Plaintiff, Earl J. Morgan, #1059872 ("Morgan"), an inmate with the Virginia Department of Corrections ("VDOC"), has filed this action pursuant to 42 U.S.C. § 1983 alleging violation of his constitutional rights under the Eighth and Fourteenth Amendments. Specifically he alleges three issues:

    I.    On January 13, 2011, Defendants, Capt. R.K. Lewis, Sgt. J.W. King, Sgt. Dobyns, C/O Elliott, and C/O Tuppons, used excessive force when they attempted to place him on a scale to be weighed while he was fully restrained and cooperative;

    II.    After the scale incident, Defendants, Capt. R.K. Lewis, Sgt. J.W. King, Sgt. Dobyns, C/O Elliott, C/O Tuppons, and C/O Bryant, were deliberately indifferent

                to his medical needs because he was returned to his cell without receiving medical attention[1]; and

    III.    Defendants, S.W. Allen, D.R. Dugger, Assistant Warden Boone, and Regional Director Robinson, deprived him of his due process rights during his disciplinary hearing by not allowing him to call witnesses, finding him guilty based on conflicting testimony, and failing to correct these errors on appeal.

Morgan requests declaratory relief, injunctive relief, nominal damages in the amount of $1.00 against each defendant, compensatory damages in the amount of $500,000 jointly and severally against all defendants, punitive damages in the amount of $500,000 against each defendant, and court costs.

The Defendants enclose and incorporate by reference the following affidavits: R. K. Lewis, Captain at Haynesville Correctional Center ("Lewis Affidavit") and D. R. Dugger, Institutional Hearings Officer at Greensville Correctional Center ("Dugger Affidavit"). Defendants respectfully request that this Court consider these exhibits as evidence in support of Defendants' motion.

## STATEMENT OF UNDISPUTED FACTS

1.    Plaintiff, Earl J. Morgan, #1059872 ("Morgan"), is an inmate, who at all pertinent times, was located at Haynesville Correctional Center.

2.    Defendants were, during pertinent times, working as employees, in various capacities, of the VDOC.

---

[1] Plaintiff also alleged defendants Gurney, Mahon, and Robinson were deliberately indifferent to his medical needs because of their responses to grievances he filed, however, this Court dismissed the claim pursuant to 28 U.S.C. § 1915A.

3. On January 13, 2011, Morgan was charged with two disciplinary charges of attempting to commit/incite a riot or rioting and disobeying an order while in his housing unit. Lewis Aff. ¶ 4. As a result, Morgan was moved to the Special Housing Unit. Id.

4. Prior to placing Morgan in his cell, correctional staff attempted to weigh him per policy. Id. Morgan was handcuffed behind his back. Id. When correctional staff attempted to place him on the scale, he went limp so that staff had to hold him up. Id. Morgan was placed on the floor until leg shackles were received and placed around Morgan's ankles. Id. Correctional staff picked him up and made several attempts to obtain his weight by laying him on the scale. When these attempts were unsuccessful, staff placed Morgan in his segregation cell. Id.

5. Morgan was seen by medical following the incident and treated for lacerations from the handcuffs. Id. at ¶ 5. He was given two band aids and ointment. Id. There are no records of any other injuries from the incident. Id.

6. On January 21, 2011, S.W. Allen conducted a disciplinary hearing on Morgan's disciplinary charges of attempting to commit/incite a riot or rioting and disobeying an order. Compl. ¶ 72, 74.

7. On February 11, 2011, Mahon, Warden of Haynesville Correctional Center, ordered both disciplinary charges be reheard due to a procedural error. Dugger Aff. ¶ 5.

8. On February 14, 2011, Morgan was served with the same disciplinary charges and provided notice that his disciplinary hearing would be conducted on February 28, 2011. Id. ¶ 6. He was also offered a Penalty Offer, which he refused. Id.

9. On February 28, 2011, D.R. Dugger conducted Morgan's disciplinary hearing. Id. at ¶ 7. At the hearing, Morgan made statements and presented witness statements and documentary

evidence. Id. After hearing all evidence, Dugger found Morgan guilty on both disciplinary charges. Id.

10. Morgan appealed the hearing officer's decision to Assistant Warden Boone, who agreed with hearing officer Dugger's finding of guilt. Compl. ¶ 94. In addition, Boone advised Morgan that once his disciplinary charges were set for rehearing, his original hearing was expunged and had no bearing on his second hearing. Id. at ¶ 93.

11. On May 14, 2011, Morgan appealed Boone's decision to Regional Director Robinson, who agreed with Boone's decision. Id. at ¶ 96, 97.

## ARGUMENT

### I. Excessive Force Claim

First, Morgan alleges that on January 13, 2011, Defendants Capt. R.K. Lewis, Sgt. J.W. King, Sgt. Dobyns, C/O Elliott, and C/O Tuppons attempted to "force him on the scale" and "after twisting, turning, bending, and slamming" him, he was placed on the floor and shackled. Compl.¶ 38-39. Morgan alleges Cpt. Lewis laid on his back and jammed his fingers in his throat, choking him. Id. at ¶ 42. As a result, Morgan claims he suffered lacerations to the arms and legs, a swollen hand and shoulder, sore throat, constant lower back pain, and emotional injury. Id. at ¶ 44. These allegations are construed as a claim under the Eighth Amendment prohibiting cruel and unusual punishment and more specifically the use of excessive force.

The Eighth Amendment does not prohibit all applications of force or infliction of pain. United States v. Gore, 592 F.3d 489 (4th Cir. 2010). The Eighth Amendment prohibits unnecessary and wanton infliction of pain and suffering, which turns on whether the force was applied "in a good faith effort to maintain or restore discipline or maliciously and sadistically for

the very purpose of causing harm." See, e.g., Wilkins v. Gaddy, 130 S. Ct. 1175, 175 L.Ed.2d 995 (2010); Wilson v. Seiter, 501 U.S. 294, 111 S. Ct. 2321, (1991). In Whitley v. Albers, the Supreme Court noted that the "Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners…in cases where the deliberate use of force is challenged as excessive and unjustified." 475 U.S. 312, 327 (1986).

The extent of injury sustained by a prisoner is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. Wilkins v. Gaddy, 130 S.Ct. 1175, 175 L.Ed. 2d 995 (2010). However, the core judicial inquiry is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Id.

In this case, any force used by correctional staff was clearly used in a good-faith effort to restore discipline, not maliciously or sadistically to cause Morgan harm. When Morgan entered the Special Housing Unit, he refused to comply with the orders of correctional officers to stand on the scale to be weighed. Lewis Aff. ¶ 4. Due to his resistance, Captain Lewis was called in to assist the other officers with Morgan. Id. When correctional staff still could not get Morgan to stand on the scale with the assistance of Lewis, they placed Morgan on the floor to restrain him with leg shackles. Id. This was necessary so that the staff could regain control of Morgan, who was refusing to comply, and then attempt to lay Morgan on the scale to get his weight. While Morgan was on the floor, Lewis used a reasonable amount of force to keep him subdued by placing his knee on Morgan's back. Id. at 6. This is a control technique within VDOC's training and procedure; it is not used to cause harm; it is used to maintain control and ensure the safety of correctional staff.

5

Morgan claims he was "not resisting and was willing to go to his cell," but he is not offering the full story. Compl ¶ 35-36. Although Morgan may not have resisted being put into his cell, he *did* resist being weighed by correctional staff before being put in his cell. Per policy, staff must document inmates' weight before placing them in segregation. In this case, it was especially important to document Morgan's weight because he was threatening a hunger strike. Lewis Aff. ¶ 4. If Morgan did not resist the correctional staff, he would have simply been weighed and put in his cell. Instead, Morgan admits that staff had to make several attempts to put him on the scale, indicating that he was not willing. Comp ¶ 38, 41. Thus, because Morgan refused to comply with staff's orders, the force used to regain control of the situation was necessary.

Further, Morgan's injuries are consistent with resisting the correctional staff's attempts to put him on the scale. Although Morgan claims he suffered lacerations to the arms and legs, a swollen hand and shoulder, sore throat, constant lower back pain, and emotional injury, records indicate that the only injuries sustained were lacerations on his wrists from the handcuffs. Such an injury is not sufficiently serious and should be considered as a factor by this Court. Lacerations from handcuffs are not consistent with the sadistic and malicious use of force by staff specifically to cause harm.

### II. Deliberate Indifference to Medical Needs Claim

Second, Morgan alleges that after the scale incident, he told Defendants Capt. R.K. Lewis, Sgt. J.W. King, Sgt. Dobyns, C/O Elliott, C/O Tuppons, and C/O Bryant that he was injured and needed medical attention, to which defendants replied "place a band-aid on it." Compl. ¶ 46. Morgan claims he made a second request for medical attention, but was placed in his cell without any medical attention. Id. at ¶ 50. Morgan also claims he was seen and treated by a nurse for

"numerous injuries" that same night. Id. at ¶ 54-56. These allegations are construed as a claim under the Eighth Amendment prohibiting cruel and unusual punishment and more specifically deliberate indifference to serious medical needs.

It is well established that a prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 102 (1976). A constitutional violation in this context involves both an objective and a subjective component. The objective component is met if the deprivation is "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). The subjective component is met if a prison official is "deliberately indifferent," that is if he "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837.

To bring a medical treatment claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Id.

In this case, Morgan cannot prove correctional staff violated the Eighth Amendment because Morgan's injuries were not sufficiently serious and he was seen by medical staff immediately following the incident. Morgan's only injuries were lacerations due to the handcuffs, which is a minimal injury that does not necessitate a doctor's attention. Lewis Aff. ¶

5. Morgan claims he told staff he was injured and needed medical attention several times, but staff ignored his requests and told him to "put a band-aid on it." Compl. ¶ 46, 49, 51. However, Morgan's claims are factually inaccurate: he was seen by medical immediately following the incident. Lewis Aff. ¶ 5. Morgan claims he was placed in his cell at 5:40 P.M. and was seen and treated by medical at 8:15 P.M. that same evening. Compl. ¶ 50, 56. Thus, even according to his own timeline, Morgan was treated by medical within a short time of when the incident occurred; his requests for medical attention were not ignored or denied by the correctional staff. At best, he is arguing there was delay in medical treatment. Correctional staff did not disregard a serious risk nor did they interfere with prison doctors' treatment. In fact, correctional staff offered Morgan the same treatment advice that medical ultimately provided him with for his injuries: band-aids. Therefore, defendants were did not violate Morgan's rights under the Eighth Amendment.

### III. Due Process Violations During Institutional Disciplinary Proceedings Claim

Third, Morgan alleges S.W. Allen and D.R. Dugger refused to call witnesses as requested by Morgan during his disciplinary hearings and found him guilty on two disciplinary charges with no supporting evidence. Compl.¶ 75-76, 88. Further, Morgan claims that Assistant Warden Boone and Director Robinson failed to correct these errors on appeal. These allegations are construed as a claim under the Fourteenth Amendment's Due Process Clause.

The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty or property. While prisoners are afforded rights of due process, they are necessarily balanced with the interests of institutional security. Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963 (1974). Because of these competing interests, inmates at disciplinary

hearings are not entitled to the same rights as a criminal defendant at a criminal trial. Superintendent, Massachusetts Corr. Inst., Walpole v. Hill, 472 U.S. 445, 105 S. Ct. 2768 (1985). Due process requires that the inmate be given advance notice of the proceedings, that there be a written statement by the fact finders as to the evidence relied on and reasons for any disciplinary action, and an opportunity to call witnesses and present evidence so long as it is not unduly hazardous to institutional safety or correctional goals. Wolff, supra. Prisoners do not have a right to confrontation and cross-examination; such procedures being wholly within the discretion of the prison officials. Id.; see, also, Baxter v. Palmigiano, 425 U.S. 308 (1976).

In this case, Morgan was provided with a fair and impartial disciplinary hearing with all due process rights afforded. Morgan's charges for attempting to commit/incite a riot or rioting and disobeying an order were originally heard on January 21, 2011 by S.W. Allen. Compl. ¶ 72, 74. However, Daniel T. Mahon, Warden of Haynesville Correctional Center, ordered both disciplinary charges be reheard due to a procedural error. Dugger Aff. ¶ 5, Enclosure B. Thus, Morgan was afforded another hearing to remedy the error and his original finding of guilt was expunged.

On February 14, 2011, Morgan was served with the same charges and on February 25, 2011, he was notified that his hearing would take place on February 28, 2011. Thus, he was provided with advance notice of the charges against him and his hearing date and time. Morgan claims that during this hearing, he was not allowed to call witnesses. However, this is false. Morgan was allowed to obtain witness statements prior to the trial and have them read into evidence, which he did. Dugger Aff. ¶ 8. Those witness statements, along with his own statements and documentary evidence were entered into the record and considered by Dugger

when making his decision. Id. Due process does not require that inmate witnesses actually participate in the disciplinary hearing or testify in person. Having an inmate witness testify via written statement is acceptable, especially considering institutional safety during proceedings. Thus, Morgan was afforded all due process rights as required by law. See Wolff, supra.

Further, Morgan claims that his disciplinary hearing was not fair and impartial. However, Morgan has not provided any evidence that Dugger based his decision of guilt on any other grounds than the evidence presented to him at the hearing. Morgan also alleges that Dugger made the following statements, "I don't know why you are down here I'm going to find you guilty..." and "the only reason you're getting a rehearing is because a sergeant offered you a penalty offer." Compl. ¶84, 85. In addition, Morgan claims witnesses heard Dugger make these statements. Id. Yet, Morgan has not provided any evidence corroborating his story. Dugger denies making the above statements and states under oath that he acted in a professional manner at all times while preparing for and conducting the disciplinary hearing. Dugger Aff. ¶ 9. The evidence shows that VDOC takes its institutional hearings seriously. The fact that Morgan's original hearing was overturned because of a procedural error and subsequently reheard illustrates VDOC's commitment to affording inmates with a fair hearing.

Finally, Morgan claims that Assistant Warden Boone and Director Robinson should have overturned Dugger's decision on appeal. To the extent that Morgan is afforded due process rights on appeal, Assistant Warden Boone and Director Robinson afforded him those rights. Morgan was provided with a copy of the disciplinary hearing decision and informed of his right to appeal. In addition, both Boone and Robinson responded to Morgan in writing of their decision to approve that action of the institutional hearing officer, addressing each issue on appeal. Morgan

simply disagrees with Boone and Robinson's decision, which does not raise to the level of a due process violation.

## DEFENDANTS SUED IN THEIR OFFICIAL CAPACITIES

To the extent that Plaintiff requests monetary damages against Defendants in their official capacity, this is not cognizable in a suit under § 1983. Neither a state nor its officials acting in their official capacities are persons for purposes of § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989). Therefore, to the extent that Plaintiff is suing Defendants in their official capacity, they are immune from suit in this matter. Id.

## QUALIFIED IMMUNITY

Further, to the extent that Plaintiff requests monetary damages in their individual capacities, all Defendants are entitled to the defense of qualified immunity, there being no allegations of conduct which violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800 (1982). "Qualified immunity is an affirmative defense that shields public officers performing discretionary duties from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Lovelace v. Lee, 472 F.3d 174, 196 (4th Cir. 2006) (internal quotation marks omitted) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity protects government officials from "bad guesses in gray areas" and ensures that they may be held personally liable only for "transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992). Qualified immunity involves a two step inquiry: (1) whether a constitutional or statutory right would have been violated on the alleged facts and (2) whether the right was clearly established.

Saucier v. Katz, 533 U.S. 194 (2001). The court has the discretion to proceed directly to the second step of the Saucier analysis after assuming without deciding that a constitutional violation occurred. Pearson v. Callahan, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

In this case, Morgan's constitutional rights were not violated when correctional staff attempted to weigh him before placing him in his cell in the Special Housing Unit. It was necessary to document Morgan's weight as it is VDOC's policy to weigh inmates before placing them in segregation. Lewis Aff. ¶ 4. In addition, Morgan had threatened a hunger strike, making his weight an issue. Id. The force used in attempting to weigh Morgan was reasonable and necessary because Morgan refused to stand on the scale and resisted the correctional staff's attempts to lay him on the scale. Correctional staff placed Morgan on the floor to regain control only after he refused to comply with their orders. Id. Lewis did not put his finger in Morgan's throat area; he did, however, put a knee in his back, which is a control technique within VDOC training and procedure. Lewis Aff. ¶ 6.

Morgan was not denied medical care by any of the correctional staff; in fact, records indicate that he was seen by medical very shortly following the incident. Lewis Aff. ¶ 5. The injuries sustained by Morgan were quite minimal and caused by his own resistance. He was provided with the appropriate treatment for his injuries. All Defendants acted with professionalism and in an appropriate manner and are therefore entitled to claim qualified immunity.

Finally, Morgan's rights were not violated during his disciplinary hearing because he was afforded all due process rights throughout the institutional disciplinary process. Morgan was served with his charges, given notice of his hearing date, and given the opportunity to provide

witness statements and documentary evidence. Dugger Aff. ¶ 6-7. Further, he was provided with the written decision from the hearing officer, who based his decision of guilt on information presented during the hearing, and from both defendants on appeal, who considered all issues in upholding Dugger's decision. Id. at ¶ 7.

## INJUNCTIVE RELIEF

Morgan requests this Court grant him a preliminary and permanent injunction ordering defendants to refrain from placing him in segregation status without just means or transferring him.

Preliminary injunctive relief is an extraordinary remedy and courts should apply it sparingly. See Direx Israel, Ltd. V. Breakthrough Med. Corp., 952 F.2d 802 (4th Cir. 1991). The party seeking the preliminary injunction must demonstrate: (1) by a "clear showing" that, he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter v. NRDC, Inc., 555 U.S. 7, 129 S. Ct. 365, 374-376 (2008). A preliminary injunction cannot be issued upon only a "possibility" of irreparable harm—that would be inconsistent with the characterization of injunctive relief as an extraordinary remedy. Id. at 22, 129 S. Ct. at 375. Injunctive relief "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id. (citing Mazurek v. Armstrong, 520 U.S. 968, 972 (1997)). Similarly, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. See, e.g. Weinberger v. Romero-Barcelo, 456 U.S. 305, 102 S. Ct. 1798 (1982). A plaintiff must demonstrate: (1) that it has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that

considering the balance of hardships between the parties, the remedy is warranted; and (4) that the public interest would not be disserved by a permanent injunction. Id.

Morgan fails to meet the high standard for a preliminary or permanent injunction because he cannot show he will suffer or has suffered irreparable harm. In addition, he cannot show he is likely to succeed on the merits. Morgan has provided no evidence that he was placed, or will be placed in segregation in the future, without just means. In fact, the evidence shows that the means for placing Morgan in segregation were just, as he was found guilty on both disciplinary charges. At best, his allegations are speculative. He was placed in segregation because he was attempting to incite a riot and disobeyed orders. Although Morgan may disagree that he was guilty of those charges, placing him in segregation did not cause him harm nor did it implicate the Eighth Amendment.

Additionally, Morgan is not likely to succeed on the merits because Morgan cannot prove that his rights were violated when he was placed in segregation. The injuries he has alleged are supposedly due to excessive force, deliberate indifference to medical needs, and violation of due process. These injuries do not relate to his segregation status, but to the incident that occurred before he was placed in segregation and hearing that occurred after. Further, he cannot prove the injuries he alleges. As discussed above, correctional staff placed Morgan in segregation due to his disciplinary charges, used reasonable force when he resisted having his vitals taken, called medical to treat his minimal injuries, and afforded him with all due process rights during his disciplinary proceedings.

Finally, Morgan requests compensatory damages in the amount of $500,000 against defendants in addition to $500,000 in punitive damages. Thus, if monetary damages can correct his injuries there is an adequate remedy at law and his injury is not an irreparable one.

          Respectfully Submitted,

          S. W. ALLEN; JOYCETINE BOONE;
          C/O BRYANT; SERGEANT DOBYNS;
          D. R. DUGGER; C/O ELLIOT; J. W. KING;
          R. K. LEWIS; A. DAVID ROBINSON;
          AND C/O TUPPONS

By:      /s/
       Richard C. Vorhis, SAAG, VSB # 23170
       Attorney for Defendants
       Office of the Attorney General
       Public Safety & Enforcement Division
       900 East Main Street
       Richmond, Virginia 23219
       Phone: (804) 786-4805
       Fax: (804) 786-4239
       rvorhis@oag.state.va.us

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of March, 2012, I electronically filed the foregoing Brief in Support of Defendants' Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following: N/A

And I hereby certify that I have mailed the document by United States Postal Service to the following non-filing user:

    Earl J. Morgan, III, #1059872
    Buckingham Correctional Center
    Post Office Box 430
    Dillwyn, Virginia 23936

                       /s/
Richard C. Vorhis, SAAG, VSB #23170
Attorney for Defendants
Office of the Attorney General
Public Safety & Enforcement Division
900 East Main Street
Richmond, Virginia 23219
Phone: (804) 786-4805
Fax: (804) 786-4239
rvorhis@oag.state.va.us